**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:12-CR-86-TLS |
| | ) | |
| TROY DITIWAY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The Defendant, Troy Ditiway, pleaded guilty to one count of possession of materials

depicting minors engaging in sexually explicit conduct, in violation of 18 U.S.C.

§ 2252(a)(4)(B). He is awaiting sentencing. This matter is before the Court on the Defendant's

request for a sentence below the applicable advisory Sentencing Guidelines range based on the

statutory factors provided for such variances in 18 U.S.C. § 3553(a). The Government argues that

the facts in this case do not warrant a variance. On October 15, 2013, the Defendant filed a

Sentencing Memorandum [ECF No. 40] arguing that the guideline sentence is greater than

necessary to comply with the purposes of punishment under § 3553(a) and raising certain

objections to the Presentence Investigation Report (PSR). The Government argued that the

advisory guideline range was reasonable. On March 24, 2014, the Court issued an Opinion and

Order [ECF No. 60] overruling the Defendant's objections to the PSR. In that Order the Court

acknowledged the Defendant's § 3553(a) arguments and noted that he would have an opportunity

to supplement and further develop his § 3553(a) arguments after an evidentiary hearing for the

presentation of evidence regarding the § 3553(a) factors. The Court held an evidentiary hearing

on this issue on May 8, 2014. Defense counsel and the Government decided that supplement

briefing was unnecessary, and the Court heard oral argument regarding the § 3553(a) factors. For the reasons provided below the Court will sentence the Defendant to a term of imprisonment of 60 months.

## BACKGROUND

The Defendant pleaded guilty to possession of approximately 710 images and 35 videos of child pornography. In April 2012 the Federal Bureau of Investigation (FBI) investigated communications involving the Defendant that included the transmission of child pornography and in September 2012 law enforcement executed a search warrant of the Defendant's apartment and recovered nineteen items of digital media. The FBI found approximately 710 graphic images and 35 videos of child pornography on two items of digital media and found no child pornography on the other devices. An FBI review of the images indicated that the images included depictions of sadomasochism and of prepubescent minors or minors under the age of 12.

On June 28, 2013, the Defendant and the Government entered a written Amended Plea Agreement in which the Defendant agreed to plead guilty to the Indictment in return for the Government's recommendations that he receive a reduction for acceptance of responsibility and a sentence equal to the minimum of the applicable guideline range. Also on June 28, 2013, the Court conducted a change of plea hearing and accepted the Defendant's plea of guilty to the Indictment. The Court referred the matter to Probation and Pretrial Services for the preparation of a presentence investigation report (PSR).

The PSR sets a base offense level of 18 under U.S.S.G. § 2G2.2(a). It applies an

enhancement of two levels because the offense involved depictions of prepubescent minors who had not attained the age of 12 years, § 2G2.2(b)(2); an enhancement of two levels because the material was distributed by the Defendant, § 2G2.2(b)(3)(F); an enhancement of four levels because the offense involved material portraying sadistic conduct or other depictions of violence, § 2G2.2(b)(4); an enhancement of two levels for use of a computer, § 2G2.2(b)(6); and an enhancement of five levels based on the number of images possessed, § 2G2.2(b)(7)(D). The PSR recommended a 3-level reduction for acceptance of responsibility under § 3E1.1(a) and (b) because the Defendant entered a timely guilty plea. This yielded a total offense level of 30. Coupled with the Defendant's criminal history category of I, the advisory guideline range of imprisonment is reported in the PSR as 97 to 120 months.

FINDINGS OF FACT

The Defendant is a 27-year-old male with no criminal history. He grew up in a stable home with dedicated parents who emphasized the value of hard work and education. Both of his parents worked outside the home, each carrying two jobs at times, to provide for their family. For this reason, there were many times where the Defendant was watched and cared for by his sister, who is 11 years older. During high school, when the Defendant was approximately 17 or 18 years of age, the Defendant began skipping school and his grades began to suffer. In an effort to get the Defendant's attention and steer him back to a positive path, his father took the difficult step of kicking the Defendant out of the house, which lasted roughly 3 months. At that time, the Defendant was allowed to return home after admitting he was wrong and agreeing to resume his education. The Defendant began to turn his life around and make more responsible decisions and

eventually earned his high school diploma.

When the Defendant's girlfriend gave birth to their son, the Defendant's only child, he continued to make responsible decisions to support his family. He moved into his own apartment with his girlfriend and son and worked two part-time jobs to provide for his family. Approximately six months after his now three-year-old son was born, the Defendant enrolled in classes at Ivy Tech. He went to school during the day and worked during the evenings while pursuing a degree in criminal justice. At the time of his arrest, he had completed 36 college credits.

The Defendant is by the accounts of his family a loving and caring father, who regularly spent time with his son, including trips to the zoo and Science Central, an educational institution in Fort Wayne, Indiana. The Defendant also frequently visited his parents, along with his sister and her ten-year-old daughter, and enjoys a positive and healthy relationship with them. His desire to be a good father and provider for his son motivated him, and the fact that his son was present when he was arrested made it that much more difficult on the Defendant. He has experienced feelings of shame and guilt for his actions and knows that he must face the consequences of his actions, but he has also expressed that he is willing to do whatever it takes to atone for his transgressions and make things right. He admit having an addiction to pornography, which he asserts progressively got worse over the years until he participated in the offense conduct, and now freely admits that he needs and wants help. The Defendant asserts that he never paid or received money for any of the images, that his computer was password protected, and that his did not intend to distribute child pornography but rather just viewed it himself.

The Defendant has been incarcerated in protective custody for 23 hours per day in the

Allen County Jail since his arrest at his own request, which stems from his desire to avoid any potential conflict with other inmates that might detract from his goal to turn his life around. He was very close to his mother, who passed away in January 2013 while the Defendant was incarcerated in this matter. Throughout the course of the investigation the Defendant has cooperated with authorities, has accepted responsibility for his actions, and has stated he is prepared to face the consequences of his poor choices, but he looks forward to a second chance on life and is eager to get the help necessary to deal with his addiction and return to society where he can hopefully find a job that enables him to help other people.

**ANALYSIS**

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) (same). Here, the primary issue involves the second step, the application of the criteria set forth in § 3553(a) to the facts and circumstances of the Defendant's particular case. In imposing a sentence, § 3553(a) requires a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of
> the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the

law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

   (C) to protect the public from further crimes of the defendant; and

   (D) to provide the defendant with needed educational or vocational

   training, medical care, or other correctional treatment in the most

   effective manner.

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

   After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: just punishment, respect for the law, deterrence, protection of the public, and rehabilitation of the defendant. In making this determination, a district court may not presume that the guideline sentence is the correct one. *Nelson*, 555 U.S. at 352; *Rita v. United States*, 551 U.S. 338, 351 (2007). When evaluating the Guidelines recommendation, a court may consider whether the Sentencing Commission fulfilled its "characteristic institutional role" in adopting the particular guideline, *see Kimbrough v. United States*, 552 U.S. 85, 109 (2007), and the court may reject any guideline on policy grounds, *United States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010). Ultimately, a district court must make an

independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007).

The Defendant argues that the enhancements applied in his case (the computer enhancement, the number of images enhancement, the enhancement for images of prepubescent minors, and the enhancement for sadistic or masochistic images) should not be considered because they would apply in nearly every case and, as such, are a poor indicator of the relative level of fault between offenders. The Government argues that the advisory guidelines, including the enhancements, are reasonable, and that the Defendant's arguments that a guideline sentence with the enhancements would make the sentence greater than necessary to comply with the purposes of sentencing are within the sound discretion of the Court under consideration of the § 3553(a) factors.

The Defendant has plead guilty to possession with intent to view material involving the sexual exploitation of minors pursuant to 18 U.S.C. § 2252(b)(4). Therefore, the Defendant is not subject to the traditional mandatory minimum of five years of imprisonment associated with child pornography convictions. *Cf.* 18 U.S.C. §§ 2252(b)(1)–(3). Rather, § 2252(b)(4) has no statutory minimum term of imprisonment and a maximum term of imprisonment of ten years. With a total offense level of 30 and a criminal history category of I, the Defendant's guideline sentencing range is 97–120 months imprisonment and supervised release of 5 years to life. The Court is aware that the Commission and many other individuals and groups scrutinizing federal sentencing have suggested a need to reassess the Guidelines with respect to child exploitation crimes and consider reforms. In December 2012, the Commission submitted a report to Congress

in which the Commission examined and critiqued federal sentencing policy in child pornography

cases. United States Sentencing Commission, *Report to Congress: Federal Child Pornography*

*Offenses* (2012), available at www.ussc.gov/ Legislative_ and_ Public_ Affairs/Congressional_

Testimony_ and_ Reports/ Sex_ Offense_ Topics/ 201212_ Federal_ Child_ Pornography_

Offenses/index.cfm. The Report focused primarily on non-production related offenses under

U.S.S.G. § 2G2.2 and expanded on the Commission's 2009 report, *The History of the Child*

*Pornography Guidelines*. Based on its extensive research, the Commission concluded that "the

current sentencing scheme results in overly severe guideline ranges for some offenders based on

outdated and disproportionate enhancements related to their collecting behavior." *Report to*

*Congress: Federal Child Pornography Offenses* at 321. Significantly, the Department of Justice

agreed with the Commission's general conclusions:

> [T]he Department agrees with the Commission's conclusion that advancements in
> technologies and the evolution of the child pornography "market" have led to a
> significantly changed landscape—one that is no longer adequately represented by the
> existing sentencing guidelines. Specifically, we agree with the Report's conclusion
> that the existing Specific Offense Characteristics ("SOCs") in USSG § 2G2.2 may
> not accurately reflect the seriousness of an offender's conduct, nor fairly account for
> differing degrees of offender dangerousness. The current guidelines can at times
> under-represent and at times over-represent the seriousness of an offender's conduct
> and the danger an offender possesses.

United States Department of Justice, *Letter to the Honorable Patti B. Saris, Chair of the United*

*States Sentencing Commission*, 1 (March 5, 2013), available at http://sentencing.typepad.com/

files/doj-letter-to-ussc-on-cp-report.pdf (last visited Aug. 7, 2013) (hereinafter "DOJ Letter"). To

comport with changes in technology and the means by which child pornography is produced and

distributed, the DOJ recommends that advisory sentencing ranges should be calculated based on:

how an offender obtains child pornography; the volume and type of child

pornography an offender collects; how long an offender has been collecting child pornography; the attention and care an offender gives to his collection; how an offenders uses his collection once obtained; how an offender protects himself and his collection from detection; and whether an offender creates, facilitates, or participates in a community centered on child exploitation.

*Id.* at 2.

The Commission's Report and the DOJ's response further strengthen this Court's belief that the child pornography guidelines do not deserve the same weight inherent in other guidelines because they did not result from careful study based in empirical analysis and national experience, but are the result of congressional mandates. *See, e.g.*, *United States v. Huffstatler*, 571 F.3d 620, 622–23 (7th Cir. 2009) (collecting district court cases relying on this rationale); *see also* United States Sentencing Commission, *The History of the Child Pornography Guidelines* (2009), available at http://www.ussc.gov/Research_and_Statistics/Research_Projects/ Sex_Offenses/20091030_History_Child_Pornography_Guidelines.pdf.

According to the United States Sentencing Commission, in 2010, in cases in which U.S.S.G. § 2G2.2 enhancements were applicable, the enhancements for possessing materials depicting prepubescent minors (§ 2G2.2(b)(2)), use of a computer (§ 2G2.2(b)(6)), and number of images (§ 2G2.2(b)(7)) applied in over 95% of cases. *Report to Congress: Federal Child Pornography Offenses* at 209. The enhancement for possession of material portraying violence or sadomasochistic conduct (§ 2G2.2(b)(4)) applied in 74% of all § 2G2.2 cases. *Id.*[1]

---

[1]The frequency of the application of these enhancements does not necessarily render them flawed and unworthy of this Court's consideration, but a consequence of such frequent application of the enhancements is that even ordinary first-time offenders often qualify for guideline sentences that approach the statutory maximum based solely on sentencing enhancements that are inherent in the crime of conviction. This, in turn, can lead to less of a distinction between the sentences of first-time offenders and those who are more dangerous offenders, who, for example, distribute pornography for pecuniary gain. This undercuts the directive in § 3553(a) to consider the nature and circumstances of the offense

The four enhancements in this case (the computer enhancement, the number of images enhancement, the enhancement for images of prepubescent minors, and the enhancement for sadistic or masochistic images) lead to an inaccurate indication of the severity of the Defendant's offense and do not serve to promote the goals of punishment in this case.[2]

> Innovations in digital cameras and videography as well as in computers and Internet-related technology, such as peer-to-peer ("P2P") file-sharing programs have been used by offenders in the production, mass distribution (both commercial and non-commercial distribution), and acquisition of child pornography. These technological changes have resulted in exponential increases in the volume and ready accessibility of child pornography, including many graphic sexual images involving very young victims, a genre that previously was not as widely circulated as it is today. As a result of such changes, entry-level offenders now easily can acquire and distribute large quantities of child pornography at little or no financial cost and often in an anonymous, indiscriminate manner.
>
> Several provisions in the current sentencing guidelines for non-production offenses—in particular, the existing enhancements for the nature and volume of the images possessed, an offender's use of a computer, and distribution of images—originally were promulgated in an earlier technological era. Indeed, most of the enhancements, in their current or antecedent versions, were promulgated when offenders typically received and distributed child pornography in printed form using the United States mail. As a result, enhancements that were intended to apply to only certain offenders who committed aggravated child pornography offenses are now being applied routinely to most offenders.

*Id.* at 312–313 (footnotes omitted).

The Sentencing Commission has previously criticized the two-level computer enhancement, finding that the enhancement did not distinguish between serious commercial distributors of online pornography and run-of-the-mill users. *See* United States Sentencing

---

and the history and characteristics of the defendant.

[2]Accounting for the Defendant's base offense level of 18, *see* U.S.S.G. § 2G2.2(a)(1), three level credit for acceptance of responsibility, and criminal history category I, these four enhancements result in an advisory guideline range of 97 to 120 months imprisonment as opposed to a range of 24 to 30 months of imprisonment.

Commission, *Report to Congress: Sex Offenses Against Children Findings and Recommendations Regarding Federal Penalties*, 25–30 (1996), available at http://www.ussc.gov/Legislative_and_Public_Affairs/ Congressional_Testimony_and_Reports/Sex_Offense_Topics/199606_RtC_Sex_Crimes_Agains t_Children/199606_RtC_SCAC.PDF. The Commission has reiterated this same concern in its most recent report. *See Report to Congress: Federal Child Pornography Offenses* at 323–24 ("the 2-level enhancement for use of a computer . . . applies in virtually every case and, thus, fails to differentiate among offenders with respect to their involvement in [online child pornography] communities.") "Because the vast majority of child pornography offenses now involve the use of a computer," the DOJ recommends that the computer enhancement "be eliminated and replaced by others, . . . which better distinguish between different classes of offenders." *DOJ Letter* at 4. Although a computer can provide an effective means to transport material quickly in interstate commerce, it is distributors, traffickers, and those desiring to entice children to engage in sexual activity who most exploit the technology and increase the market for child pornography.

For this Defendant, the computer enhancement does not correspond to an elevated seriousness of his offense or to any of the purposes of sentencing. There is no indication that he intended to sell or distribute images to others for profit or otherwise, and empirical data does not show that using a computer as a means to possess and view pornography is a more serious or culpable offense than viewing the same images if they had been received by another medium, such as through the mail. *Cf. United States v. Hanson*, 561 F. Supp. 2d 1004, 1010–11 (E.D. Wis. 2008) (stating that this enhancement is logically flawed because on-line pornography generally comes from the same pool of images found in other formats). Accordingly, a two-level

11

enhancement to the Defendant's base offense level for the use of a computer yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Likewise, the enhancement for the number of images does not further the purposes of sentencing in this Defendant's case. While the DOJ maintains that the number of images enhancement should continue to be applied, it recognizes that "in light of the technology-facilitated ease of obtaining larger child pornography collections, the numeric thresholds should be substantially increased for each offense level, so as to better distinguish between occasional and habitual collectors of child pornography." *DOJ Letter* at 4.[3] *See also United States v. Diaz*, 720 F. Supp. 2d 1039, 1042 (E.D. Wis. 2010) ("offenders readily obtain the necessary number of images with minimal effort"); *United States v. Burns*, No. 07 CR 556, 2009 WL 3617448, at *7 (N.D. Ill. Oct. 27, 2009) ("the number and type of images received is frequently accidental"). Although the Guidelines provide for a five-level enhancement for more than 600 images, a four-level enhancement for 300 to 600 images, a three-level enhancement for 150 to 300 images, or a two-level enhancement for 10 to 150 images, these distinctions are not linked to any empirical data pertaining to sentencing and the purposes of punishment, and in this case they do not provide an accurate indication of culpability. Under the Guidelines, each video corresponds to 75 images for purposes of applying the enhancement—resulting in a finding that the Defendant possessed more than 3,335 images. This additional five-point enhancement increases the magnitude of the Defendant's offense without a showing of corresponding culpability. Accordingly, a five-level enhancement to the Defendant's base offense level for the number of

---

[3] The maximum five-level enhancement under § 2G2.2(b)(7)(D) for possessing 600 or more images applied to 67.6% of cases in 2010. *Report to Congress: Federal Child Pornography Offenses* at 209.

images yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

Under the facts of this case, the Court also finds the enhancement for possession of an image of a prepubescent minor or minor who had not reached the age of twelve does not further the purposes of punishment. In 2010 non-production cases, 96.3% of offenders possessed child pornography depicting prepubescent minors or minors under the age of 12. *Report to Congress: Federal Child Pornography Offenses* at 140–41. As other courts have noted, images of very young children are sadly "typical of this crime," and do not indicate increased culpability for those receiving such images. *Hanson*, 561 F. Supp. 2d at 1009; *Burns*, 2009 WL 3617448, at *13. There is no evidence that the Defendant specifically sought out prepubescent minors. Consequently, the Court finds that applying this enhancement would not appropriately measure the Defendant's culpability under the facts of this case.

The enhancement for possession of sado-masochistic images also yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes. In 2010, U.S.S.G. § 2G2.2(b)(4) applied in 74.2% of all cases. *Report to Congress: Federal Child Pornography Offenses* at 316. Although originally intended to provide additional proportional punishment for aggravating conduct, this enhancement now routinely applies to the vast majority of offenders. Moreover, there is no evidence that the Defendant sought out sado-masochistic images. Accordingly, a four-level enhancement to the Defendant's base offense level for possessing sado-masochistic images yields a sentence that is greater than necessary to achieve § 3553(a)'s purposes.

For these reasons, the Court will not give deference to the increase in the advisory Guideline sentence that is brought about by these specific offense characteristics.

The Defendant has asked the Court to sentence him below the advisory guideline range of

97 to 120 months, and instead impose a sentence of 60 months. He argues that he is languishing in the Allen County Jail and that only protective custody is keeping him alive. He contends that he did not pay or receive money for the images and only saved them for his personal use, with no intention to distribute the images. The Defendant argues that he has fully accepted responsibility for his offense, that he wants help addressing his addiction to pornography generally, and that he will use the opportunity to change and be a law-abiding, productive citizen after he has served the necessary time for his offense. The Government argues that there are no grounds for a variance in this case. The Government contends that the Defendant was raised in a good, stable home, that he knew right from wrong, and that the collateral damage brought about by the Defendant's conduct is not grounds for a variance because all crimes have collateral damage.

In consideration of the nature and circumstances of the offense, the Court finds that the Defendant did not seek pecuniary gain or exchange money in his acquisition of images; thus, he did not contribute to any commercial market for child pornography. Nor was the Defendant motivated to distribute images, but instead collected them for his personal use. In addition, the Defendant was not involved in the production of child pornography but rather was a run-of-the-mill user who viewed the images privately.

In consideration of the characteristics of the Defendant, the Court finds that the Defendant has no criminal history and appears, from his testimony before this Court, to be highly motivated to never repeat the offending behavior. The Court finds that the Defendant's family circumstances, particularly his relationship with, or the care of, his son and his niece, is a mitigating factor because he is at a low degree of offender dangerousness compared to other offenders. The Defendant received punishment from his father for his poor choices as a teenager,

14

including being kicked out of the house for truancy at school. He turned his life around after punishment, however, and made responsible decisions for a significant period rather than recidivate to truancy from school and apathy towards his education. The Court finds that, based on the history and characteristics of the Defendant, he is at a low risk to recidivate. He has demonstrated that he is capable of turning his life around not only for the short term, but for a lasting change. He came from a good home, has good support from his family, and knows right from wrong. As a teenager he strayed from the right path but got back on and did the right things, taking responsibility for his actions and for his future. Due to the nature of his offense, he will have many conditions as part of his supervised release, including registering as a sex offender and monitoring of his computer, which will follow him for many years, further reducing the risk of recidivism.

The Court finds that the Defendant has genuine remorse and has not made excuses but has accepted the consequences of his actions. He appears highly motivated not only to get through the punishment he faces in this case, but to get better and to address and correct the issues that have brought him before the Court in this matter. Prison is a great disincentive for illegal conduct, and indeed it appears so for this Defendant, who has struggled during his time spent in the Allen County Jail, languishing over the guilt and shame of his offense and his circumstances he has brought upon himself and others. Yet he has not made excuses, but has accepted responsibility for his actions, and he is eager to make a positive and lasting change in his life, not only for himself, but for his family. Notwithstanding the amount of pornography in this case, which is quickly and easily acquired with only a few keystrokes and drives the guideline range in this case, the Defendant's offense conduct appears to be an anomaly in his life.

The history and characteristics of the Defendant show that he can turn his life around, and a sentence of 60 months is not insignificant.

The receipt, distribution, and possession of child pornography is a form of sexual exploitation of the most vulnerable members of our society, and thus is a serious offense. Five years of imprisonment is also a serious sentence, and it is sufficient to promote respect for the law and to provide just punishment, deterrence, protection for the public, and rehabilitation. A term of 120 months of imprisonment would no better serve these goals. The Court finds that 5 years of imprisonment, combined with supervised release, is sufficient time for the Defendant to address those issues that caused him to disregard the well being of those who have been harmed by his actions. The term of supervised release will provide additional time to monitor the Defendant's actions with respect to the possession of pornographic matter. Finally, this Court's review of similar cases across the country and in this Circuit suggests that a term of 5 years would not create unwarranted sentencing disparities among defendants.

## CONCLUSION

For the foregoing reasons, the Court finds that a sentence of 60 months is sufficient to meet the purposes of sentencing in this case and is consistent with the statute. The Sentencing set for June 17, 2014, is VACATED and RESET to June 16, 2014, at 4:00 PM in U.S. District Court - Fort Wayne before Judge Theresa L. Springmann.

SO ORDERED on June 9, 2014.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT